Paul D. Sarkozi
Alan Tenenbaum
TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700
Attorneys for Plaintiffs NIKE, Inc.
and NIKE USA, Inc.

# 12 CV 2275

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIKE, INC. and NIKE USA, INC.,

      Plaintiffs,

      -against-

REEBOK INTERNATIONAL LTD.,

      Defendant.

**Civil Docket No.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs NIKE, Inc. and NIKE USA, Inc. (collectively "NIKE" or "Plaintiffs"), by and

through their attorneys, Tannenbaum Helpern Syracuse & Hirschtritt LLP, as and for their

Complaint allege, as follows:

## NATURE OF THE ACTION

1.     This is an action for preliminary and permanent injunctive relief, compensatory

damages, punitive damages and attorneys' fees arising from Reebok International Ltd.'s

unauthorized and improper use of Tim Tebow's name on New York Jets-related apparel, conduct

which constitutes violations of the Lanham Act (unfair competition), misappropriation of rights

of publicity, tortious interference with current and prospective business relationships and unjust

enrichment.

**Reebok Is Using Tim Tebow's Name on New York Jets-Related Apparel Without His Permission or a Valid License**

2.      NIKE and Reebok are competitors (Reebok is a subsidiary of NIKE's global competitor, adidas AG). Each offers for sale a variety of athletic footwear, apparel and other products, including football-related licensed apparel products.

3.      Last week, Reebok introduced new products bearing professional football player Tim Tebow's name and presumed New York Jets football number on New York Jets-branded apparel. Reebok has been distributing and selling such products in interstate commerce since around March 21, 2012. Reebok has no authorization from Mr. Tebow or anyone else to use Mr. Tebow's name or other identification on such Jets product. Unlike Reebok, NIKE is authorized and licensed to use Mr. Tebow's name on such products.

4.      On March 21, 2012, the Denver Broncos announced that they had agreed to trade Mr. Tebow to the New York Jets. The New York area is the largest professional sports and media market in the United States and is the largest such market for National Football League ("NFL") football – currently the most popular sport in the United States as measured by, among other things, national television rankings.

5.      Mr. Tebow's high-profile trade to the New York Jets has garnered around-the-clock national news media coverage, and generated an immediate and short-lived intense consumer demand for Tim Tebow-identified New York Jets-branded apparel. The public demand for such Tebow-Jets products spans the entire United States. Moreover, the trade has spawned substantial market demand during a time when NFL-related commercial activities are normally at a seasonal low point with the completion of the 2011 NFL season over a month past and the 2012 NFL regular season still five months away. Reebok has taken it upon itself to

2

illegitimately seize on this unique and short-lived consumer opportunity. Despite not having any current right or license to produce new NFL products featuring NFL player identification (i.e., player name and number), Reebok is producing and selling Tim Tebow-identified New York Jets apparel products in order to capitalize on the public's short-lived intense consumer appetite for such products, and to prevent NIKE from doing so. An example of such newly produced Tim Tebow Jets product is set out below:

**Reebok** ⓘ **Tim Tebow Green New York Jets Name & Number T-Shirt**
THE AUTHENTIC OUTFITTER



*See* FansEdge website: http://www.fansedge.com/Tim-Tebow-Grey-New-York-Jets-Name-Number-T-Shirt-_-780719583_PD.html (last viewed Mar. 25, 2012);
*see also* Modell's Sporting Goods website:
http://www.modells.com/product/tim_tebow_green_new_york_jets_name_number_t-shirt-22-50113.do?sortby=nameAscend&from=Search (last viewed Mar. 25, 2012) (describing this Reebok shirt as "officially licensed").

### The Tim Tebow Phenomenon

6.      Timothy Richard Tebow ("Tebow") is a professional football player who has attracted unprecedented public interest and attention from the media, a phenomenon commonly referred to as "Tebow-Mania." As quarterback for the University of Florida football team, he

3

won the Heisman Trophy in 2007 as a sophomore – the first sophomore recipient in the 77-year history of the award – and helped Florida win two national championships. He was named the offensive Most Valuable Player in the 2008 Bowl Championship Series college football championship game, and he is a two-time winner of the Maxwell Award as the nation's top college football player.

7.      Tebow was selected by the Denver Broncos NFL franchise in the first round of the 2010 National Football League's rookie draft. Before becoming the Broncos' starting quarterback during the 2011 NFL season, the Broncos' record was 1-4. Prompted in large part by the vociferous demands of the Broncos' fan base, Tebow was given the opportunity to start at quarterback. Tebow responded by leading the team to an improbable six-game winning streak, often by coming from behind late in the fourth quarter to win in miraculous fashion (popularly referred to as "Tebow Time"). The Broncos went on to win their first AFC West title and compete in their first playoff game since 2005. Tebow became a national sensation and a household name. He was named America's favorite pro athlete in a recent ESPN poll. http://espn.go.com/nfl/story/_/id/7451061/espn-sports-poll-denver-broncos-tim-tebow-us-favorite-active-pro-athlete. One writer described Tebow as "the most-discussed phenomenon of the [2011] National Football League Season." WSJ – The Saturday Essay (Dec. 10, 2011), http://online.wsj.com/article/SB10001424052970203413304577084770973155282.html. By completion of the 2011 NFL season, Tebow's Broncos jersey was the second highest selling NFL jersey among all NFL players. http://online.wsj.com/article/SB10001424052970203413304577084770973155282.html

4

8.      Tebow's trade to the New York Jets was announced on March 21, 2012,
following completion of the 2011 NFL season and the Broncos' widely publicized signing of
future hall of fame and free agent quarterback Peyton Manning.  Peyton Manning's departure
from the Indianapolis Colts and entry into the free agent market had its own dramatic moments
and was also widely covered in the media.  Coupled with the Tebow trade, the Manning/Tebow
sagas provided the public with unprecedented NFL media coverage during a normally subdued
NFL offseason period.  As a result, a vociferous demand for Tebow Jets products unfurled in the
New York market and beyond.

### The Trade Created a Unique Short-Lived Demand for
### Tebow-Identified New York Jets-Related Apparel

9.      Tebow's No. 15 Denver Broncos jersey has consistently been among the most
popular NFL jerseys.  This past NFL season, Tebow's Broncos jersey was topped only by sales
of the jersey for Green Bay Packers' star quarterback Aaron Rodgers (Super Bowl XLV MVP in
2010, FedEx Air NFL Player of the Year 2010) (*see*
http://www.cnbc.com/id/44789354/The_10_Best_Selling_NFL_Jerseys_2011).

10.      Tebow's trade to the New York Jets, coupled with the franchise's location within
the NFL's largest market and the nation's media center, has created enormous demand for
Tebow-identified New York Jets apparel.  Reebok has sought to take advantage of this unique,
short-lived opportunity by supplying, without authorization or license, Tebow-identified New
York Jets apparel to retailers in New York and elsewhere around the country.  Reebok is also
supplying internet retailers that market and sell throughout the United States. *See*
http://www.todaysthv.com/video/1526660617001/1/New-Tim-Tebow-Jets-jerseys-go-on-sale

(last viewed Mar. 25, 2012); http://www.ny1.com/content/top_stories/158099/fans-scoop-up-jets-merchandise-with-tebow-s-name (last viewed Mar. 25, 2012).

11.     On information and belief, shortly after the Tebow trade was announced on March 21, 2012, Reebok notified retailers that it was offering for sale Tebow-identified Jets apparel, and began accepting orders.  As discussed in greater detail later in this Complaint, Reebok has no authority to use Tebow's name on such apparel products.

12.     The day after the Tebow trade to the New York Jets was announced, a *New York Daily News* report posted on March 22, 2012 noted that "Jets boosters mobbed the Modell's in Times Square Thursday to snatch up a shipment of $30 Tebow t-shirts bearing the backup quarterback's familiar name and number."  http://www.nydailynews.com/new-york/tebow-fever-all-out-blitz-stores-city-15-gear-article-1.1049353 (last viewed Mar. 25, 2012).

13.     A spokesman for sporting goods retailer Modell's is reported to have said that Modell's stores expect to start carrying Tebow Jets jerseys starting the week of March 26, 2012. http://www.cbsnews.com/8301-400_162-57403324/tebow-trade-prompts-fans-to-switch-allegiance/.  The Tebow Jets products distributed to Modell's and other retailers for immediate sale at retail are not being supplied by NIKE.  A Tebow Jets t-shirt manufactured by Reebok is offered for sale on Modell's website.  *See* http://www.modells.com/product/tim_tebow_green_new_york_jets_name___number_t-shirt-22-50113.do?sortby=nameAscend&from=Search (last viewed Mar. 25, 2012) (describing this Tebow-identified Reebok shirt as "officially licensed").

14.     As described in greater detail later in this Complaint, NIKE's efforts to obtain orders from retailers for Tebow-identified  Jets products have been rebuffed because retailers

6

have pending orders with Reebok and want to sell through such inventory before placing orders with NIKE. As discussed in greater detail below, because Reebok is the outgoing NFL Properties LLC ("NFL Properties") licensee and has existing New York Jets-branded inventory immediately available, it is able to service retailer demand by simply incorporating Tebow's name and number (despite not having authorization to do so) on existing New York Jets-branded product such as jerseys and t-shirts with relative ease and a quick turnaround time.

**The Licensing Rights Associated with the Manufacture and Sale of NFL Apparel Identified by a Specific Player's Name and Number**

15.     A legitimately licensed NFL player-/NFL team-identified product requires two distinct grants of intellectual property rights: the right to use the trademarks of the NFL and/or its member clubs (collectively, "NFL Marks"), and the right to use players' names and playing numbers. The right to use NFL Marks on licensed products is exclusively controlled by the NFL's licensing entity, NFL Properties. While NFL Properties grants third parties rights to use NFL Marks, it has no authority to grant rights to use players' names or numbers and, in its licenses, explicitly disclaims any such rights and provides that it shall be the sole responsibility of the manufacturer to obtain any right to use players' names and numbers.

16.     There are only two ways in which a product manufacturer can acquire the right to use an NFL player's name and number on merchandise: (1) obtain that right directly from the individual player, or (2) enter into a so-called "group license" with NFL Players Incorporated, the licensing arm of the National Football League Players Association, which is the players' union ("NFL Players"). NIKE currently enjoys a license from both Tebow individually and a group license from NFL Players. Reebok has never had an agreement with Tebow individually, nor did it obtain his permission or consent to the manufacture of Tebow Jets product. Reebok

7

had a valid group license with NFL Players, but that license, as discussed below, expired prior to March 1, 2012, and thus could not convey any rights beyond that date to create new Tebow-identified Jets product.

17.     Under a March 24, 2010 Letter Agreement with Tebow (the "NIKE – Tebow Agreement"), Tebow granted NIKE the exclusive right to use Tebow's name in connection with, among other products, athletic and casual apparel ("Covered Products"). That agreement remains in full force and effect.

18.     NIKE's group license with NFL Players commenced March 1, 2012 (the "NIKE – NFL Players License"). The NIKE – NFL Players License grants NIKE the right to use an aggregate of the identities of six or more NFL players (hence, a so-called "group license") in connection with the manufacture and sale of certain products, namely jerseys, t-shirts and fleece apparel. NFL Players controls these group license rights through an assignment made by each player in the NFL. Practically, this group licensing model affords marketers and licensed product manufacturers the convenience of "one-stop shopping" by providing them the ability to secure the publicity rights of multiple NFL players at once from a single source, rather than having to seek a license from each NFL player individually, which could be unduly burdensome with nearly 1,700 active NFL roster players. However, the individual players are still free to enter into individual endorsement and licensing arrangements with third parties for singular uses of the athlete's identity on athletic apparel and other products, as Tebow did with NIKE.

19.     Reebok's recent sale and distribution of Tebow-identified Jets apparel is not part of a group offering, but is a singular offering focused on Tebow and the public's intense interest in him and his recent trade to the New York Jets. Reebok has not been authorized to use

8

Tebow's name and number for New York Jets-branded apparel products, either by Tebow individually or by NFL Players pursuant to a group licensing arrangement.

20.     Reebok has no current agreement with NFL Players that allows it to manufacture and sell Tebow-identified Jets products. Reebok's agreement with NFL Players expired prior to March 1, 2012, the effective date of the NIKE – NFL Players License. Tebow was not a member of the New York Jets football team until after March 21, 2012 (the trade announcement), long after March 1, 2012, when Reebok's NFL Players group license rights expired. As of March 1, 2012, Reebok's rights under its NFL Players group license were limited to, at most, the right to sell out existing inventory of products identified to individual players existing prior to March 1, 2012. For Tebow, that would mean existing Denver Broncos inventory – not new New York Jets products. Whatever right Reebok may have had under its expired NFL Players group license to the use of Tebow's name on apparel was limited to Denver Broncos inventory, the team he was on as of March 1, 2012 when Reebok's rights granted from NFL Players expired. An authorized representative of NFL Players has confirmed to NIKE that NFL Players has not authorized Reebok to use Tebow's name and number on New York Jets-branded products.

21.     The final element associated with the manufacture and sale of NFL apparel is the rights to use NFL Marks. Reebok's NFL Properties license to use the NFL Marks on apparel expires March 31, 2012. Commencing April 1, 2012, NIKE's NFL Properties license to use the NFL Marks on apparel begins, and NIKE will succeed Reebok as the supplier of NFL team uniforms and as a licensee to manufacture and sell certain NFL-authorized apparel, such as jerseys and t-shirts featuring NFL Marks. In short, Reebok may create new products featuring

9

NFL Marks, but not new products featuring an individual player, without such player's authorization or consent.

22.     Therefore, in very general terms, in order to manufacture and sell apparel that contains both NFL Marks, such as an NFL team's trademarks (e.g., the New York Jets name and logo), and an NFL player's name and number, one needs a license both from (i) the NFL for use of NFL Marks (i.e., rights in the color, design and logos for the jersey) and (ii) the individual identified player (or NFL Players for group uses) for the right to use the indentified player's name and number.  Reebok does not have both as it lacks a current license with NFL Players and has no agreement with Tebow.

### Tebow Advised Reebok That It Was Misappropriating His Name

23.     By letter dated March 23, 2012, an authorized representative of Tebow advised Reebok that its use of Tebow's name was unauthorized and demanded that such use be immediately discontinued and demanded the immediate removal of the offending products from any and all locations.  Tebow's representative requested a response from Reebok no later than March 26, 2012.   Reebok did not respond as requested.

### Reebok's Sale of Tebow-Identified Jets Apparel Is Preventing NIKE from Taking Advantage of a Unique Marketing Opportunity Arising from the Tebow Trade and the Upcoming Announcement of NIKE's New NFL Uniform and Apparel Program

24.     The new NIKE-supplied NFL uniforms for all 32 NFL teams are scheduled to be unveiled on April 3, 2012 in a major media event to be held in New York City.  The much anticipated event will mark the start of NIKE's five-year deal to be the league's exclusive

provider of on-field apparel, which includes game uniforms and sideline apparel.  NIKE is also licensed to manufacture and sell NFL-authorized jerseys and other apparel items to consumers.

25.     As noted above, the demand for Tebow-identified Jets apparel arising from last week's trade is intense during a normally subdued time period for NFL merchandise sales, and at a time when NIKE is going to extraordinary lengths to build up demand for its soon-to-be released NFL product offerings.  Based on the upcoming April 3 unveiling of the NIKE-supplied official New York Jets uniforms and apparel for use in the 2012 season, demand for Tebow-identified Jets apparel would be expected to continue to increase.  However, unless restrained, Reebok's distribution of unauthorized Tebow-identified Jets apparel will preclude NIKE and its licensors from fully realizing the unique opportunity presented by the convergence of the Tebow trade to the Jets and the announcement of the new NIKE NFL uniforms.  Upon information and belief, Reebok is in the process of shipping large volumes of Tebow-identified apparel products to retailers for sale to the public.  These shipments are expected to reach retailers this week.

26.     The opportunity to sell the first Tebow-identified Jets apparel is a unique and short-lived opportunity.  It is unlikely that a consumer who purchases an unauthorized Tebow-identified NFL jersey or t-shirt from Reebok this week will purchase an authorized Tebow jersey or t-shirt from NIKE the following week.  Unless Reebok is restrained from supplying unauthorized Tebow-identified Jets apparel, the current unique consumer demand for these products will be satisfied or substantially reduced, and the opportunity for NIKE to fully realize the benefits of this unique period of demand will be lost forever.

## THE PARTIES

27.     Plaintiffs NIKE, Inc. and NIKE USA, Inc. are corporations organized under the

laws of the State of Oregon, and their principal place of business is at One Bowerman Drive, Beaverton, Oregon. The parent company NIKE, Inc. and its directly and indirectly wholly controlled subsidiaries such as NIKE USA, together with sibling companies that comprise the NIKE Group, are engaged in the worldwide distribution of products. It is common for them to engage in intra-company licensing and/or assignments of licensed rights to facilitate NIKE's worldwide business. The rights at issue in this case benefit both NIKE, Inc. and NIKE USA, Inc. Reebok is a corporation organized under the laws of the State of Massachusetts, and its principal place of business is at 1895 J.W Foster Blvd., Canton, Massachusetts.

## JURISDICTION AND VENUE

28.     This is an action arising under the laws of the United States, 15 U.S.C. §§ 1116 and 1121 and 28 U.S.C. §§ 1331 and 1338, as this claim arises under the Lanham Act, 15 U.S.C. § 1051, et seq.

29.     Jurisdiction in this Court is also proper pursuant to supplemental jurisdiction under 28 U.S.C. § 1367(a) because some of the claims arise under state law and are based on a common nucleus of operative facts with the federal claims, such that NIKE would ordinarily be expected to try all claims in a single judicial proceeding. In the absence of a federal question, this Court would have diversity jurisdiction as the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

30.     Personal jurisdiction over Reebok is proper as Reebok has had and continues to have continuous and systematic contacts with the state of New York and the City of New York through, at a minimum, Reebok's sale of products in multiple retail stores located throughout the city. Furthermore, Reebok has purposefully directed its activities to residents of the state of New

York and New York City, which activities have resulted in injuries to NIKE as alleged in this

Complaint. Reebok has engaged in intentional actions directed at the residents of New York

City by and through Reebok's active and ongoing sales of unauthorized apparel bearing Tebow's

name in violation of the rights of NIKE and its licensors. Reebok knew, or should have known,

that its conduct was without authority and would cause harm to NIKE and its licensors.

31.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1392(b) and (c) as

Reebok is subject to personal jurisdiction in this district.

**First Claim for Relief**
(Lanham Act)

32.     NIKE realleges the allegations in paragraphs 1-31.

33.     Reebok's use of Tebow's name in connection with the sale and distribution of

New York Jets-related apparel in interstate commerce, and the advertising, marketing and

promotion made in support of such sales, is likely to cause confusion, to cause mistake or to

deceive as to Tebow's authorization, sponsorship, endorsement or approval of such Reebok

goods and commercial activities.

34.     Reebok's conduct in using Tebow's name without authority on New York Jets-

related apparel sold and distributed by Reebok constitutes a violation of 15 U.S.C. § 1125(a).

35.     As a result of the acts of Reebok, NIKE has suffered, and will continue to suffer,

damages to its business and profit, while Reebok profits at NIKE's expense.

36.     NIKE is also entitled to recover Reebok's profits derived from the sale of Tebow-

identified New York Jets-related apparel.

13

37.     The conduct of Reebok, and the ongoing direct results of those actions, have caused and will continue to cause great and irreparable harm to NIKE in an amount that cannot be fully ascertained, thereby leaving NIKE with no adequate remedy at law.  Unless Reebok is preliminarily and permanently enjoined from its unauthorized use of Tebow's name, and from engaging in unfair competition, NIKE will continue to suffer irreparable harm.  NIKE lacks an adequate remedy at law.

38.     As authorized by the Lanham Act, NIKE is also entitled to an award of treble damages and attorneys' fees and costs as Reebok's actions as alleged in this First Claim were willful, egregious and otherwise exceptional.

### Second Claim for Relief
(Misappropriation of Rights of Publicity)

39.     NIKE realleges the allegations in paragraphs 1-38.

40.     On information and belief, Tebow is currently a resident of Colorado but is in the process of establishing residency in the New York City area.

41.     Reebok has misappropriated the commercial value of Tebow's identity and celebrity by using his name without his consent for purposes of trade or commerce in connection with Covered Products.  As the exclusive licensee for the use of Tebow's name on apparel, including the use of his name on New York Jets-related apparel sold through sporting goods retailers, NIKE stands in Tebow's shoes for purposes of enforcing and protecting his publicity and commercialization rights in connection with the exclusive rights granted to NIKE.

42.     Reebok is seeking to exploit Tebow's name for Reebok's commercial gain. Without authority or right, Reebok is using Tebow's name on New York Jets-related apparel

14

products and in the advertisement, promotion and marketing of those products to resellers and others.

43.     NIKE has suffered, and will continue to suffer, damages to its business and profits as a result of the acts of Reebok described in this Second Claim.  In order to avoid Reebok's unjust enrichment, NIKE should be awarded the greater of NIKE's actual damages or Reebok's profits derived from the unauthorized use of Tebow's name on New York Jets-related apparel.

44.     The conduct of Reebok, and the ongoing direct results of those actions, have caused and will continue to cause great and irreparable harm to NIKE in an amount that cannot be fully ascertained, thereby leaving NIKE with no adequate remedy at law.  Unless Reebok is preliminarily and permanently enjoined from its unauthorized use of Tebow's name and celebrity, and from engaging in unfair competition, NIKE will continue to suffer irreparable harm.  NIKE lacks an adequate remedy at law.

### Third Claim for Relief
(Tortious Interference with Current and Prospective Business Relationships)

45.     NIKE realleges the allegations in paragraphs 1-44.

46.     Reebok has wrongfully and intentionally interfered with NIKE's current and prospective relationship with various retailers of New York Jets-related apparel, including leading sporting apparel retailers.  Reebok is aware of these relationships as Reebok directly competes with NIKE to supply products to these retailers.

47.     On information and belief, through its conduct described above, Reebok intended to disrupt and diminish NIKE's opportunity to provide retailers and consumers with authorized Tebow-identified New York Jets-related apparel.  Reebok understood that the Tebow trade to the

New York Jets, coupled with NIKE's scheduled April 3 announcement for the new NFL uniforms, presented a unique, time-sensitive opportunity to take advantage of the enormous reseller and consumer interest in purchasing Tebow-identified New York Jets-related apparel.

48.     Reebok's conduct has disrupted NIKE's current and prospective relationships with sporting goods retailers wishing to sell Tebow-identified New York Jets-related apparel. But for Reebok's conduct, retailers would have ordered and purchased NIKE's Tebow-identified New York Jets-related apparel rather than Reebok's unauthorized apparel.

49.     Reebok's sale of unauthorized "Tebow"-marked apparel is wrongful. Such conduct constitutes a violation of Tebow's publicity rights and amounts to a false endorsement and false advertising.

50.     NIKE has suffered, and will continue to suffer, damages to its business and profits as a result of the acts of Reebok described in this Third Claim. NIKE should be awarded the greater of NIKE's actual damages or Reebok's profits derived from the unauthorized use of Tebow's name on New York Jets-related apparel.

51.     The conduct of Reebok, and the ongoing direct results of those actions, have caused and will continue to cause great and irreparable harm to NIKE in an amount that cannot be fully ascertained, thereby leaving NIKE with no adequate remedy at law. Unless Reebok is preliminarily and permanently enjoined from its unauthorized use of Tebow's name and celebrity, and from engaging in unfair competition, NIKE will continue to suffer irreparable harm. NIKE lacks an adequate remedy at law.

16

**Fourth Claim for Releif**
(Unjust Enrichment)

52.     NIKE realleges the allegations in paragraphs 1-51.

53.     Reebok appropriated Tebow's name and celebrity and used it for the purpose of promoting, marketing, advertising and selling New York Jets-related apparel.

54.     Tebow has not authorized Reebok's use of his name for such apparel.  NIKE owns the exclusive the right to use Tebow's name for such apparel.

55.     NIKE is entitled to restitution from Reebok in the amount of the benefit derived by Reebok for its unauthorized use of Tebow's name and celebrity, which amount is not less than the profit obtained by Reebok from the sale and distribution of Tebow-identified New York Jets-related apparel.

**PRAYER FOR RELIEF**

WHEREFORE, NIKE respectfully requests that judgment be entered as follows:

1.     As used in this Prayer for Relief, the term "Unauthorized Tebow Product(s)" means any athletic and casual apparel product sold or distributed by, manufactured by or for, or in the possession or control of Reebok with the name "Tebow" printed on it.  "Unauthorized Tebow Product" includes the New York Jets-related apparel with the Tebow name on it that has been, or is being, manufactured by or for Reebok, and that is currently being distributed and sold by or for the benefit of Reebok.  "Unauthorized Tebow Product" does not include any Denver Broncos-related apparel marked with the Tebow name that was manufactured by or for Reebok on or before March 1, 2012 so long as (i) the use of Tebow's name for that purpose was and is authorized under the terms of a valid license from the NFL Players, and (ii) Reebok is licensed to

17

distribute and sell Broncos-related merchandize that was marked with Tebow's name prior to March 1, 2012.

2.      As part of a final judgment, and pending final judgment, Reebok, together with its agents, officers, employees and affiliated businesses, and those acting in active concert with them, should be restrained from:

3..      Manufacturing, causing to be manufactured, selling, attempting to sell, causing to be sold, permitting any other individual or entity to sell, distributing, promoting, marketing and advertising an Unauthorized Tebow Product;

(i)      Taking or accepting orders for any Unauthorized Tebow Product; and

(ii)      Causing or authorizing any Unauthorized Tebow Product to be shipped or delivered to anyone other than for the destruction or withdrawal of such goods from distribution.

4.      As part of a final judgment, and pending final judgment, Reebok, together with its agents, officers, employees and affiliated businesses, and those acting in active concert with them, should be ordered to:

(i)      Advise all retailers and distributors carrying Unauthorized Tebow Product that this injunction has issued and inform them that distributing and selling Unauthorized Tebow Product may expose them to liability;

(ii)      Offer to repurchase all Unauthorized Tebow Product from resellers, vendors and distributors at not less than the price paid for the Unauthorized Tebow Product;

(iii)      Recall all Unauthorized Tebow Product currently in distribution channels controlled by Reebok; and

        (iv)    Destroy all Unauthorized Tebow Product that is now in, or hereafter comes into, Reebok's custody, possession or control.

5.       Reebok should be ordered to provide an accounting to NIKE of Reebok's revenues and profits derived through any of the actions alleged in this Complaint.

6.       NIKE should be awarded its actual and damages permissible under law for Reebok's willful and intentional misconduct as alleged in this Complaint.

7.       NIKE should be awarded exemplary or punitive damages by reason of Reebok's violation of Tebow's rights of publicity in connection with the sale and distribution of Unauthorized Tebow Product, and Reebok's intentional interference with NIKE's current and prospective business advantage.

8.       NIKE should be awarded its reasonable attorneys' fees and costs under 15 U.S.C. § 1117 based on Reebok's willful, wrongful and exceptional actions as alleged in this Complaint.

9.       NIKE should also be awarded such other and further relief as this Court deems just and equitable.

Dated: New York, New York
       March 27, 2012

                    TANNENBAUM HELPERN
                    SYRACUSE & HIRSCHTRITT LLP

                  By: _____
                    Paul D. Sarkozi
                    sarkozi@thsh.com
                    Alan Tenenbaum
                    tenenbaum@thsh.com
                    900 Third Avenue
                    New York, New York 10022
                    (212) 508-6700
                *Attorneys for Plaintiffs*
                *NIKE, INC., and NIKE USA, INC.*