Paul D. Sarkozi
Alan Tenenbaum
TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York  10022
(212) 508-6700
Attorneys for Plaintiffs NIKE, Inc.
and NIKE USA, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC. and NIKE USA, INC.,<br><br>       Plaintiffs,<br><br>      -against-<br><br>REEBOK INTERNATIONAL LTD.,<br><br>      Defendant. | **12 Civ 2275 (PKC) (RLE)** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

**Table of Contents**

**Page**

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF RELEVANT FACTS .......................................................................... 2

      A.  Tebow's High-Profile Trade to the New York Jets Creates a Unique and
          Valuable Market Opportunity for NIKE ......................................................... 3

      B.  Reebok's Unauthorized and Wrongful Efforts to Appropriate the Market
          Opportunity for Tebow-Identified New York Jets Apparel ........................... 4

ARGUMENT ...................................................................................................................... 5

      A.  NIKE Is Likely to Prevail on the Merits of Its Claims ................................. 6

            1.  Reebok Is Misappropriating Tim Tebow's Name ............................. 6

            2.  Unlike Reebok, NIKE Is Authorized to Use Tim Tebow's Name
               and Number on Sports Apparel ......................................................... 8

            3.  Reebok Falsely Represents That Tebow Has Authorized
               Reebok to Use Tebow's Name in Connection with New York
               Jets-Related Products ........................................................................ 9

            4.  Reebok Is Wrongfully Interfering with NIKE's Current and
               Prospective Business Advantage ..................................................... 10

      B.  NIKE Will Suffer Irreparable Harm Absent Reebok's Immediate
          Restraint ....................................................................................................... 12

      C.  The Balance of the Equities Strongly Favors Granting NIKE
          Immediate Temporary Relief ...................................................................... 15

      D.  The Public Interest Favors Restraining Reebok's Misappropriation ............ 16

CONCLUSION ................................................................................................................. 16

## Table of Authorities

*Ali v. Playgirl, Inc.*,
447 F. Supp. 723 (S.D.N.Y. 1978) ......................................................................................... 14

*Allen v. Nat'l Video, Inc.*,
610 F. Supp. 612 (S.D.N.Y. 1985) ......................................................................................... 14

*BBY Solutions, Inc. v. Schwartz*,
No. 11 Civ. 0947 (ADS) (ETB), 2011 U.S. Dist. LEXIS 151585 (E.D.N.Y. Nov. 17, 2011) ... 15

*Bertuglia v. City of New York*,
No. 11 Civ. 2141 (JGK), 2012 U.S. Dist. LEXIS 36927 (S.D.N.Y. Mar. 19, 2012)............. 10-11

*Bi-Rite Enters., Inc. v. Button Master*,
555 F. Supp. 1188 (S.D.N.Y. 1983)........................................................................................... 8

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182, 189-190 (2004).................................................................................................. 12

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
957 F. Supp. 477 (S.D.N.Y. 1997) ........................................................................................... 11

*Gridiron.com, Inc. v. Nat'l Football League Players Ass'n, Inc.*,
106 F. Supp. 2d 1309 (S.D. Fla. 2000) ............................................................................ 9, 13, 16

*Hillerich & Bradsby Co. v. Christian Bros.*,
943 F. Supp. 1136 (D. Minn. 1996)..................................................................................... 9, 14, 16

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982)..................................................................................................................... 4

*Joe Dickerson & Assocs., LLC v. Dittmar*,
34 P.3d 995 (Colo. 2001)............................................................................................................. 7

*Kane v. N.Y. State Nurses Ass'n*,
No. 11 Civ. 6505 (RJS), 2011 U.S. Dist. LEXIS 118244 (S.D.N.Y. Oct. 13, 2011) ................ 5-6

*McFarland v. Miller*,
14 F.3d 912 (3d Cir. 1994)........................................................................................................... 7

*Michaels v. Internet Entm't Grp., Inc.*,
5 F. Supp. 2d 823 (C.D. Cal. 1998) .......................................................................................... 14

*MJ & Partners Rest., Ltd. P'ship v. Zadikoff,*
10 F. Supp. 2d 922 (N.D. Ill. 1998) ................................................................................ 9

*Moroccanoil, Inc. v. Moroccan Gold, LLC,*
590 F. Supp. 2d 1271 (C.D. Cal. 2008) ........................................................................ 15

*Nice Man Merch., Inc. v. Logocroft, Ltd.,*
23 U.S.P.Q.2d 1290 (E.D. Pa. 1992) ............................................................................ 10

*R. Squared Global, Inc. v. Serendipity 3, Inc.,*
No. 11 Civ. 7155 (PKC), 2011 U.S. Dist. LEXIS 127291 (S.D.N.Y. Nov. 3, 2011) ............ 6, 12

*Rosa Parks v. LaFace Records,*
329 F.3d 437 (6th Cir. 2003) ...................................................................................... 10

*Ryan v. Volpone Stamp Co.,*
107 F. Supp. 2d 369 (S.D.N.Y. 2000) ............................................................................ 9

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.,*
800 F. Supp. 2d 515 (S.D.N.Y. 2011) .......................................................................... 16

*Waits v. Frito-Lay, Inc.,*
978 F.2d 1093 (9th Cir. 1992) ...................................................................................... 9

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ........................................................................................................ 6

## Statutes

15 U.S.C. § 1125(a) ................................................................................................ 1, 9
Fed. R. Civ. P. 65(b) ..................................................................................................... 5
Fla. Stat. § 540.08(2) ..................................................................................................... 7
N.Y. Civ. Rights Law § 51 ............................................................................................. 7

## Other Authorities

J. Thomas McCarthy, *The Rights of Publicity and Privacy* §6:3 (2d ed. 2010) ................. 7, 9, 15
Restatement (Third) of Unfair Competition § 46 (1995) .................................................. 7, 8, 14
Restatement (Second) of Torts § 767 cmt. c (1977) ........................................................ 12

Plaintiffs NIKE, Inc. and NIKE USA, Inc. (collectively "NIKE") respectfully submit this memorandum of law in support of their motion for a temporary restraining order ("TRO") and preliminary injunction against Defendant Reebok International, Ltd. ("Reebok") pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## I. PRELIMINARY STATEMENT

Last Wednesday, the National Football League's ("NFL") Denver Broncos announced they were trading quarterback Tim Tebow ("Tebow") to the New York Jets. Tebow has been described as "the most-discussed phenomenon of the [2011] National Football League Season," and he has attracted unprecedented national public interest and attention. *See* Burdette Decl.

Tebow's move from Denver to the largest media and sports market in the United States instantly created a unique sports-merchandising opportunity, as legions of Tebow and New York Jets fans seek to acquire New York Jets-related apparel bearing his name and number. Reebok understands this opportunity and wasted no time in offering and supplying Tebow-identified New York Jets-related apparel even though Reebok is not authorized to use Tebow's name for this purpose. Burdette Decl., ¶¶ 6-7.

Reebok's misappropriation of Tebow's name and celebrity violates his right of publicity and the rights he granted to NIKE to use his name and number in connection with New York Jets-related apparel. It also constitutes unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Because of Tebow's expansive nationwide fame and celebrity, the intense media interest concerning his trade to the Jets, and the upcoming April 3, 2012 announcement of NIKE's new NFL team uniforms, NIKE is presented with a-once-in-a-lifetime commercial opportunity. NIKE has positioned itself to offer the first licensed, Tebow-identified New York Jets-related

jerseys and apparel based on the new, highly anticipated 2012 uniforms and apparel to be supplied to the NFL by NIKE. Reebok's improper, unauthorized, and wrongful sales of Tebow-identified New York Jets apparel threatens to destroy or diminish NIKE's opportunity.

This really is a matter of days. Nike has reason to believe that Reebok is rushing unauthorized Tebow-identified product to the market to meet the unprecedented consumer demand. To preserve the status quo that existed before Reebok's wrongful conduct, and to prevent Reebok from causing further, ongoing, and irreparable damage to NIKE's unique commercial opportunity, NIKE respectfully requests that the Court enter an immediate temporary restraining order prohibiting Reebok from further marketing or selling New York Jets-related apparel identified with Tebow's name or number.

## II. STATEMENT OF RELEVANT FACTS

The relevant factual background is set forth in the various declarations filed in support of NIKE's Application for TRO. NIKE will seek to avoid repeating all of that information here and understands that the Court will carefully review the supporting declarations and the Complaint. The following discussion is intended to introduce and summarize the critical facts.

NIKE and Reebok are competitors. Each offers for sale a variety of athletic footwear, apparel, and other products, including football-related licensed apparel products. Burdette Decl., ¶ 4. A legitimately licensed NFL player and NFL team-identified product requires two distinct grants of intellectual property rights: (1) the right to use the trademarks of the NFL and/or its member clubs (logos, team name, and uniform designs) (collectively, "NFL Marks"), and (2) the right to use a player's name and playing number. The right to use the NFL Marks is controlled by the NFL's licensing arm, NFL Properties LLC ("NFL Properties"). NIKE will succeed to Reebok's license to the NFL Marks effective April 1, 2012. Burdette Decl., ¶¶ 12-18.

2

The right to use a player's name and number can only be acquired in one of two ways. A manufacturer can (a) obtain that right directly from the individual NFL player, or (b) enter into a so-called "group license" with NFL Players Incorporated ("NFL Players"), the licensing arm of the NFL Players Association -- the players' union. Burdette Decl., ¶ 13.

NIKE currently has exclusive licensing rights from Tebow personally to use his name and number on apparel. NIKE has also entered into a group license with NFL Players that became effective March 1, 2012. Reebok has no agreement with Tebow individually, and Reebok's group license from the NFL Players expired no later than March 1, 2012. In sum, Reebok has no right to use Tebow's name on New York Jets apparel. Regardless of whether Reebok's license with NFL Properties allows it to create and sell new apparel items featuring NFL Marks up to March 31, 2012 (when Reebok's NFL Marks license expires and NIKE's takes effect), Reebok does not have the *current* right to use Tebow's name to identify any New York Jets-related apparel. In short, between now and March 31, 2012, Reebok may market and sell new products featuring NFL Marks, but not new products featuring an individual player, without such player's authorization or consent. Burdette Decl., ¶ 19. Reebok does not have Tebow's authorization or consent to use his name and number on New York Jets apparel.

A.     **Tebow's High-Profile Trade to the New York Jets Creates a Unique and Valuable Market Opportunity for NIKE.**

As discussed above, Tebow's high-profile trade to the New York Jets has garnered substantial national and local news media coverage, and generated intense, immediate, short-lived consumer demand for Tebow-identified Jets-branded apparel. The public demand for such Tebow-Jets products is not only in the New York City area, but spans the entire United States. Burdette Decl., ¶¶ 8-9.

3

In connection with the upcoming and highly anticipated April 3, 2012 launch of NIKE's new 2012 NFL uniforms, NIKE plans to offer a line of NFL-licensed merchandise, including New York Jets-related merchandise bearing Tebow's name, pursuant to the licensing rights that NIKE acquired from NFL Properties, NFL Players, and Tebow. This situation presents a uniquely valuable opportunity for NIKE to promote its own brand and products among NFL fans at large, and among New York Jets and Tebow fans in particular. Burdette Decl., ¶¶ 20-23. However, Reebok's improper merchandizing of Tebow's name and celebrity threatens to undercut and diminish NIKE's one-of-kind market and marketing opportunity.

**B.     Reebok's Unauthorized and Wrongful Efforts to Appropriate the Market Opportunity for Tebow-Identified New York Jets Apparel.**

Immediately following the announcement of Tebow's trade to the New York Jets, Reebok sought to take advantage of this unique, short-lived opportunity by offering to supply, without authorization or license, Tebow-identified, New York Jets-related Reebok apparel to retailers in New York and elsewhere. Reebok is offering its unauthorized and unlicensed Tebow-identified, New York Jets-related apparel to capitalize on the public's immediate and intense demand for such products, and to prevent or impair NIKE's ability to do so following its official April 3 launch of the new NFL team uniforms. Burdette Decl., ¶¶ 20-21.[1]

In a March 23, 2012 letter, Tebow's counsel demanded that Reebok cease its misappropriation, reminded Reebok that it is not authorized to use Tebow's name on the newly

---

[1] It makes little difference, in terms of Reebok's liability in this action, whether Reebok itself is causing Tebow's name to be printed on Reebok products, or whether Reebok is knowingly suffering its retailers to unlawfully print Tebow's name on Reebok products. Reebok either is directly or indirectly liable for these acts of unfair competition and misappropriation. "[I]f a manufacturer or distributor . . . continues to supply its product to one whom it knows or has reason to know" is infringing intellectual property rights, "the manufacturer or distributor is contributorially responsible." *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854 (1982).

4

released merchandise and noted that Tebow has licensed the exclusive use of his name to NIKE for use on sports apparel.

> As I think you must be aware, Mr. Tebow has not granted Reebok the right to use his name in connection with the Merchandise. Additionally, we have been informed that the NFL Players Association has not granted Reebok any rights in connection with the Merchandise. Finally, as we think you must also be aware, Mr. Tebow has a contractual relationship with Nike under which he has granted Nike the exclusive right to use his name in connection with athletic apparel.

*See* Kirk Decl. Ex. 1. Reebok never responded to the cease-and-desist letter from Tebow's counsel. *Id.*

Reebok's misappropriation of Tebow's name and celebrity is irreparably harming NIKE by thwarting NIKE's efforts to associate its brand and its sports apparel and related products with Tebow's name and creating a false public impression that Reebok is authorized to use Tebow's name and number on its New York Jets-related apparel.

Further, the opportunity to sell the first Tebow-identified New York Jets-related apparel is unique and short-lived. It is unlikely that a person who purchases an unauthorized Tebow-identified NFL jersey from Reebok this week will also purchase an authorized Tebow jersey from NIKE next week. Burdette Decl., ¶ 22. Unless Reebok is restrained from supplying unauthorized Tebow-identified New York Jets-related apparel, NIKE will be prevented from fully realizing the unique opportunity presented by the convergence of the Tebow trade to the New York Jets and the announcement of the new NIKE NFL uniforms.

### III. ARGUMENT

A plaintiff seeking preliminary relief in the form of a preliminary injunction or TRO under Fed. R. Civ. P. 65(b) "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Kane v. N.Y. State Nurses*

*Ass'n*, No. 11 Civ. 6505 (RJS), 2011 U.S. Dist. LEXIS 118244, at *5 (S.D.N.Y. Oct. 13, 2011

(quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  As an alternative to

showing a likelihood of success on the merits, a plaintiff may alternatively demonstrate

sufficiently serious questions going to the merits to make them a fair ground for litigation and a

balance of hardships tipping decidedly in  its favor.  *R Squared Global, Inc. v. Serendipity 3,*

*Inc.*, No. 11 Civ. 7155 (PKC), 2011 U.S. Dist. LEXIS 127291 at *15-16 (S.D.N.Y. Nov. 3,

2011).  The same standard applies to a motion for a temporary restraining order.[2]  *Kane*, 2011

U.S. Dist. LEXIS 118244, at *5.

     Here, each of the factors for imposition of interim equitable relief tips sharply in NIKE's

favor, and NIKE should be granted immediate equitable relief to stop Reebok's unfair

competition, actual and threatened misappropriation of Tebow's name, and wrongful interference

with NIKE's rights, during the pendency of this action.

**A.**    **NIKE Is Likely to Prevail on the Merits of Its Claims.**

    **1.**    **Reebok Is Misappropriating Tim Tebow's Name.**

     As discussed above, Reebok is unlawfully misappropriating Tebow's name by putting his

name and number on New York Jets-related apparel offered and sold by Reebok, without

Tebow's consent or a valid license.  It appears that Reebok is rapidly delivering this

unauthorized product to retailers to meet the unprecedented demand for Tebow-identified, New

York Jets-related apparel.

     The tort of misappropriation of the right of publicity arises from the wrongful

commercial appropriation of "a person's identity by using without consent the person's name . . .

---

[2] NIKE will provide copies of its motion and associated papers to Reebok management and in-house counsel contemporaneous with the filing of this application. *See* Fed. R. Civ. P. 65 Certification.

6

for purposes of trade." Restatement (Third) of Unfair Competition § 46 (1995). The right of publicity, and the corresponding tort for unauthorized commercial exploitation of another's right of publicity, has been explicitly recognized, under the common law or by statute, in at least 31 states—including *every* state that has squarely considered the issue. J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 6:3 (2d ed. 2010).[3]

NIKE is likely to prevail on each of the elements of its right of publicity claim because it has demonstrated that: (1) Reebok has used Tebow's name and number on New York Jets-related apparel; (2) Reebok's use of Tebow's name and number was made for commercial gain and was not privileged; (3) Reebok's use of Tebow's name and number on New York Jets-related apparel was not authorized; and (4) Reebok's unauthorized use of Tebow's name and rights of publicity caused damage to NIKE. *See* Restatement (Third) of Unfair Competition § 46.[4]

There is no doubt that Reebok is providing retailers with Tebow-identified New York Jets-related apparel. An example from the Internet is set out below:

---

[3] As far as NIKE is aware, only two states' courts—Nebraska and New York—have *ever* refused to recognize such a tort, and in both states those decisions have since been superseded. *See* McCarthy, *supra*, § 6:3.

[4] *See also, e.g.*, N.Y. Civ. Rights Law § 51 (establishing statutory cause of action for unauthorized commercial exploitation of name or likeness); Fla. Stat. § 540.08(2) (similar); *McFarland v. Miller*, 14 F.3d 912, 919-21 (3d Cir. 1994) (New Jersey recognizes a common law property right of publicity that is infringed by unauthorized commercial misappropriation); *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1001-02 (Colo. 2001) (adopting common law right of publicity tort and listing elements).

**Reebok** | Tim Tebow Green New York Jets Name & Number T-Shirt

THE AUTHENTIC OUTFITTER



*See* Burdette Decl., ¶ 7, Ex. 1.

### 2.   Unlike Reebok, NIKE Is Authorized to Use Tim Tebow's Name and Number on Sports Apparel.

Reebok is profiting by misappropriating Tebow's famous and valuable publicity rights in connection with New York Jets-related apparel. As discussed above, it is NIKE, not Reebok, that enjoys the right to use Tebow's name and number on sports apparel, and it is NIKE, not Reebok, that has the right to take advantage of the unique opportunity presented by Tebow's trade to the New York Jets. *See supra* part II.A.

As an exclusive licensee of Tebow's publicity rights and name for use on apparel, NIKE has the right to sue Reebok for its unauthorized use of Tebow's name on New York Jets-related apparel. *See, e.g.,* Restatement (Third) of Unfair Competition § 46 cmt. g (an exclusive licensee of a celebrity's right of publicity "has standing to object to commercial uses that infringe on the scope of the licensee's exclusive right"); *Bi-Rite Enters., Inc. v. Button Master*, 555 F. Supp. 1188, 1200 (S.D.N.Y. 1983) ("Holders of exclusive [right of publicity] licenses gain standing to

8

protect their interests against all who would encroach on the exclusive rights embodied in the licenses.").[5]

For the reasons discussed above, NIKE is likely to prevail on its right of publicity claim.

**3.     Reebok Falsely Represents That Tebow Has Authorized Reebok to Use Tebow's Name in Connection with New York Jets-Related Products.**

By offering and marketing New York Jets apparel emblazoned with Tebow's famous name and number, Reebok falsely represents that Tebow has approved the use of his name in connection with these products. Reebok's unauthorized use of Tebow's name and jersey number constitutes a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[6] *See Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 380-81 (S.D.N.Y. 2000). In *Ryan*, a company sold novelty items, such as stamps and teddy bears, using the name and image of sports celebrity Nolan Ryan pursuant to a license agreement with Ryan, but continued selling those items after the license agreement expired. *Id.* The court held that this conduct likely violated the Lanham Act because

---

[5] *See generally* McCarthy, *supra*, § 1053 (the principle "that an exclusive licensee has standing to sue has never been seriously questioned" (footnotes omitted; citing cases)); *see also, e.g., Gridiron.com, Inc. v. Nat'l Football League Players Ass'n, Inc.*, 106 F. Supp. 2d 1309, 1315 (S.D. Fla. 2000) (holding that NFL Players had standing to bring successful right of publicity claim for commercial misappropriation of players' names and identities); *MJ & Partners Rest., Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 930 (N.D. Ill. 1998) ("[A] licensee of a celebrity's name may state a cause of action for misappropriation of the right of publicity."); *Hillerich & Bradsby Co. v. Christian Bros.*, 943 F. Supp. 1136, 1138, 1142 (D. Minn. 1996) (imposing preliminary injunction against use of professional hockey player's name on unauthorized sports merchandise at request of exclusive licensee of player's right of publicity for subject merchandise).

[6] As a direct competitor of Reebok and the exclusive licensee of Tebow's name with respect to the products at issue in this case, NIKE has a commercial interest in Tebow's name and celebrity sufficient to confer standing to assert its Lanham Act claim. *See, e.g., Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992) ("Those with standing to bring [a Lanham Act celebrity authorization] claim include parties with . . . a commercial interest in the misused mark.").

9

"there is a likelihood that consumers will [incorrectly] assume that Nolan Ryan has authorized the use of his signature and likeness" in association with the goods. *Id.* at 308. Accordingly, the court entered a preliminary injunction against the continuing use of Ryan's name and image in violation of the Lanham Act (and against further violation of his rights of publicity under New York state law). *Id.* at 405.

For the same reasons, NIKE is likely to prevail on its Lanham Act false association claim based on Reebok's unauthorized use of Tebow's name and uniform number on New York Jets-related apparel.[7]

### 4.    Reebok Is Wrongfully Interfering with NIKE's Current and Prospective Business Advantage.

Reebok's intentional and wrongful interference with NIKE's rights to distribute New York Jets-related apparel bearing Tebow's name and number constitutes common law intentional interference with current and prospective economic relations. "To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must 'establish four elements: (1) the existence of a profitable business relationship, (2) [the defendant's] interference with that relationship, (3) [the defendant's] use of dishonest, unfair or improper means, and (4) damage to [the plaintiff's] business relationships.'" *Bertuglia v. City of New York*, No. 11 Civ. 2141 (JGK), 2012 U.S. Dist. LEXIS 36927, at *53-54 (S.D.N.Y. Mar. 19,

---

[7] Unauthorized placement of a celebrity's name or image on or in a product is actionable under the Lanham Act, with or without any related advertising using the celebrity's name or likeness. *See, e.g., Rosa Parks v. LaFace Records*, 329 F.3d 437, 446 (6th Cir. 2003) (use of civil rights figure's name in title of song could create false impression of authorization); *Nice Man Merch., Inc. v. Logocroft, Ltd.*, 23 U.S.P.Q.2d 1290, 1293-94 (E.D. Pa. 1992) (issuing preliminary injunction barring use of celebrity musicians' names and likenesses on novelty memorabilia based on right of publicity and Lanham Act claims).

2012) (brackets in original) (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997)).

NIKE is likely to succeed in proving that Reebok's wrongful and unauthorized use of Tebow's name and number to mark Reebok's New York Jets-related apparel is an intentional interference with NIKE's economic relationship with retailers and consumers. By virtue of its exclusive endorsement agreement and its rights under its agreements with the NFL and NFL Players, NIKE has a prospective economic advantage with NFL fans seeking to buy NIKE sports apparel and other merchandise bearing the NFL Marks and the names and jersey numbers of NFL players. This prospective advantage included the right to offer the first available Tebow-identified New York Jets-related sports apparel through sporting goods and other retailers. As a direct competitor of NIKE, Reebok was fully aware of NIKE's existing retail distribution relationships and resulting prospective business advantage. Reebok was particularly knowledgeable about retail relationships related to NFL-authorized team apparel marked with players' names and numbers, because Reebok had just lost those rights to NIKE.

As a result of Reebok's actions, NIKE has been unable to interest retailers in ordering NIKE offerings of Tebow-identified New York Jets-related apparel that will be available after the April 3 New York City launch of the new NIKE-supplied NFL uniforms, because NIKE's retail partners have indicated that they have already placed orders for the (unauthorized) Tebow-identified New York Jets-related apparel that has been, or is going to be, supplied by Reebok. Burdette Decl., ¶ 11.

Reebok's conduct is depriving NIKE of its prospective economic advantage in making sales of the first available New York Jets-themed sports apparel and merchandise bearing Tebow's name and jersey number. Because Reebok's conduct violates Tebow's right of

11

publicity and creates a false impression that Tebow has approved Reebok's use of his name and

persona on Reebok's New York Jets-related merchandise in violation of the Lanham Act,

Reebok's conduct constitutes "improper means" for purposes of establishing tortious

interference. *See, e.g., Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189-190 (2004) (independently

tortious conduct constitutes improper means for purposes of tortious interference with economic

relations claim); *see also* Restatement (Second) of Torts § 767 cmt. c (1977) (conduct in

violation of statutes, regulations, common law rules, or other public policy supports finding of

improper means).

For these reasons, NIKE is likely to prevail on its tortious interference claims.[8]

**B.    NIKE Will Suffer Irreparable Harm Absent Reebok's Immediate Restraint.**

Unless Reebok's misappropriation of Tebow's name is immediately restrained, NIKE

will suffer irreparable harm.  The opportunity to provide the first Tebow-identified New York

Jets jerseys and other related apparel to retailers and consumers will only happen once.  NIKE's

opportunity to maximize the marketing impact of its highly-anticipated launch of the new NIKE

NFL jerseys planned for next week are similarly unique.  The confluence of these events presents

a remarkable opportunity for NIKE.  Each of these unique opportunities, however, will only last

a short time.  Reebok is rapidly attempting to meet that unprecedented consumer demand for

Tebow-identified New York Jets products.  At the same time, Reebok's efforts to promote and

sell its own products are also redirecting media attention away from the debut of NIKE's NFL

jerseys, including NIKE's own New York Jets jerseys.

---

[8] Although, as discussed above, NIKE has shown that it is likely to prevail on each of its claims, because, as discussed below, the balance of harms tips sharply in NIKE's favor, the requested TRO should be granted even if the Court concludes that NIKE has shown only sufficient questions going to the merits to make them a fair ground for litigation. *R Squared*, 2011 U.S. Dist. LEXIS 127291, at *15-16.

The Tebow trade and the launch of the NIKE's NFL uniforms and apparel present a singular marketing and commercial opportunity. While NIKE supplies and retails jerseys for hundreds of professional, collegiate, and Olympic teams, consumer and media interest around NIKE's NFL jersey reveal and launch is unprecedented. NIKE's NFL jersey launch will be NIKE's biggest and most elaborate team product launch ever, and the biggest and most elaborate team product launch in industry history. NIKE has gone to extraordinary lengths and invested staggering resources in the month-long NFL jersey launch campaign that commences next Monday. As a result of NIKE's marketing effort and investment, media coverage, public excitement, and speculation regarding NIKE's upcoming NFL jersey unveiling abounds, including on the Internet. *See, e.g.,* Brunette Decl., Ex. 1.

Significantly, the New York market—the nation's media capital—will be the epicenter of NIKE's NFL uniform launch effort. Next week in Manhattan and Brooklyn alone, NIKE has scheduled star-studded VIP events, a large scale media event for national and international print and television press, and large scale consumer events. Over the coming weeks, NIKE will also hold athlete appearances, a NikeTown event, and documentary screenings in the New York market.

Reebok's sale of Tebow-identified New York Jets-related apparel—and the media attention focused on the consumer frenzy Reebok's distribution of these unauthorized products has generated—interferes with NIKE's valuable contract rights and threatens to destroy or greatly diminish NIKE's valuable commercial and marketing opportunity around TebowMania, NIKE's launch of its own New York Jets jersey, and the debut of the jerseys and uniforms of all of 32 NFL teams. *See Gridiron.com, Inc. v. Nat'l Football League Players Ass'n, Inc.*, 106 F. Supp. 2d 1309, 1316 (S.D. Fla. 2000) (issuing injunction against unauthorized exploitation of

13

publicity rights of NFL players based on irreparable harm "through loss of advertising revenue and goodwill" because infringing conduct was "damaging [the players'] goodwill by causing potential and actual conflicts with already existing licensees").

Control over the commercial use of a celebrity's public persona, including the right of publicity, is a unique property right, the loss of which money damages alone cannot fully compensate. *See Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 630 (S.D.N.Y. 1985) (entering preliminary injunction under Lanham Act to prevent irreparable harm from ongoing marketing that created a likelihood of confusion as to approval of commercial products by celebrity Woody Allen); *see also, e.g., Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998) ("[A] celebrity's property interest in his name and likeness is unique, and cannot be adequately compensated by money damages."); *Hillerich & Bradsby Co. v. Christian Bros.*, 943 F. Supp. 1136, 1142 (D. Minn. 1996) (granting injunction against unauthorized use of professional hockey player's name on hockey merchandise and equipment based on irreparable harm to exclusive licensee through "loss of goodwill and injury to reputation which may not be remedied by money damages").[9]

It would be impossible to fully quantify or award damages adequate to fully compensate NIKE for the loss of this unique brand-enhancing and commercial opportunity. *See, e.g., Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 729 (S.D.N.Y. 1978) (finding irreparable harm in right of publicity case based in part on difficulty in accurately and fully compensating for harm to

---

[9] *See generally* McCarthy, *supra*, § 11:23 (noting that "money damages are not an adequate remedy for future continuing violations" of the right of publicity and that declining an injunction effectively forces a celebrity to allow his persona to be associated with a third party's commercial activities against his will and outside his control; collecting cases); Restatement (Third) of Unfair Competition § 48 cmt. b ("A continuing or threatened infringement of a person's right of publicity ordinarily justifies an award of injunctive relief.").

celebrity's reputation and goodwill through damages). Accordingly, the Court should immediately restrain Reebok's wrongful and unauthorized use of Tebow's name and number in connection with New York Jets apparel.

**C.    The Balance of the Equities Strongly Favors Granting NIKE Immediate Temporary Relief.**

Given the irreparable harm that NIKE is suffering and will suffer due to Reebok's unauthorized and wrongful commercial exploitation of Tebow's name and celebrity, the balance weighs strongly in favor of granting emergency and interim injunctive relief. Absent truly unique circumstances involving extreme prejudice to a defendant, harm to the defendant in ceasing unlawful use of a celebrity's name cannot outweigh the irreparable harm caused by such unlawful commercial exploitation. *See McCarthy, supra,* § 11:23 (preliminary injunctions have been denied based on a weighing of the equities only in rare and unusual cases where an injunction would impose "an inordinate burden on defendant"). Here, Reebok would not suffer any unusual or extreme prejudice from ceasing sales of the offending merchandise. All that an injunction would require of Reebok is to cease its misappropriation of Tebow's name and withdraw its unauthorized products from the market. Any costs Reebok would incur as a result of the requested relief are costs of its own making arising from its intentional, unauthorized, and wrongful efforts to exploit Tebow's name and celebrity, and to interfere with NIKE's rights, and as such, are properly disregarded in balancing the equities. *See BBY Solutions, Inc. v. Schwartz,* No. 11 Civ. 0947 (ADS) (ETB), 2011 U.S. Dist. LEXIS 151585, at *9-10 (E.D.N.Y. Nov. 17, 2011) (discounting costs that would be incurred by defendant where the requested injunction would merely restrain the defendant "from engaging in further illegal activity" (internal quotation marks and citation omitted)); *see also, e.g., Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) ("any injury that Defendants may suffer if

15

preliminarily enjoined may be discounted by the fact that Defendants brought the injury upon themselves by intentionally" infringing plaintiff's rights in violation of Lanham Act); *Gridiron.com*, 106 F. Supp. 2d at 1316 (injunction against unauthorized use of professional football players' publicity rights does not harm any "legitimate interest" of infringer).

**D.     The Public Interest Favors Restraining Reebok's Misappropriation.**

NIKE is ready and willing to meet market demand for Tebow-identified New York Jets-related apparel promptly after the announcement of the new NFL uniforms on April 3. Consequently, the public will not be deprived of a desired product.  Burdette Decl., ¶ 23.

It is in the public interest to avoid marketplace confusion and deception, which weigh heavily in favor of granting the requested relief. *See, e.g., U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011) (concluding that public interest "in being free from confusion, deception and mistake" favored grant of injunction in Lanham Act case); *Hillerich & Bradsby Co.*, 943 F. Supp. at 1142 (imposing preliminary injunction in favor of exclusive licensee and endorsee of hockey player Mark Messier in right of publicity and Lanham Act case because "the public would be harmed if products which are not endorsed by Messier bear his name prior to a decision on the merits in this case").

## IV. CONCLUSION

NIKE respectfully requests that the Court enter an immediate temporary restraining order prohibiting Reebok and those acting in concert with Reebok from further sales of New York Jets-themed merchandise featuring the name or jersey number of Tebow.  Reebok should

16

also be required to withdraw all such infringing products from its distribution channels and retailers.[10]

Dated: New York, New York
      March 28, 2012

                             TANNENBAUM HELPERN
                             SYRACUSE & HIRSCHTRITT LLP

                             By:_____

                                Paul D. Sarkozi
                                sarkozi@thsh.com
                                Alan Tenenbaum
                                tenenbaum@thsh.com
                                900 Third Avenue
                                New York, New York 10022
                                (212) 508-6700

                             *Attorneys for Plaintiffs*
                             *NIKE, Inc., and NIKE USA, Inc.*

---

[10] This relief will preserve the status quo existing prior to Reebok's unlawful exploitation of Tebow's name and celebrity, and is also appropriate in light of Reebok's bad faith in engaging in that exploitation with no colorable right to do so. *See, e.g., Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 414-16 (S.D.N.Y. 2011) (requiring bad-faith trademark infringer to recall infringing products based on willful infringing conduct and balance of the equities), *aff'd*, No. 11-502-cv, 2012 U.S. App. LEXIS 2742 (2d. Cir. Feb. 10, 2012).